**AFFIRM; and Opinion Filed April 30, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00939-CR**

**No. 05-12-00070-CR**

**MICHAEL MARSHALL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-12634-Y; F10-12635-Y**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]

Opinion by Justice Bridges

Michael Marshall appeals his aggravated assault conviction in cause number 05-11-00939-CR and deadly conduct conviction in cause number 05-12-00070-CR. A jury convicted appellant and sentenced him to sixty years' confinement in cause number 05-11-00939-CR and twenty years' confinement in cause number 05-12-00070-CR. In three issues, appellant argues the evidence is legally insufficient to support his conviction, he received ineffective assistance of counsel, and the trial court erred in denying his motion to strike a juror. We affirm the trial court's judgments.

---

[1] The Honorable Martin E. Richter, Retired Justice, sitting by assignment.

Balch Springs police officer Trey Ward testified that, on October 22, 2010 at approximately 8:30 p.m., he received a report of a shooting at a beer store. Ward proceeded to the beer store where he saw a man lying in the parking lot. The man appeared to have a gunshot wound on his right buttocks. "There was a little bit of blood and stuff on his jeans." After calling for medical attention, Ward questioned store employees in an effort to determine if there was a "person around with a gun. Employees told Ward "a vehicle had pulled up and the person had rolled out of the vehicle into the parking lot." Ward spoke to the shooting victim, Forris Barton, who said "Mike" shot him. Ward spoke to the victim's companion, LeeAnn Maestas, who also referred to the shooter as "a subject named Mike" who drove a blue pickup truck. Ward examined Barton's vehicle and noticed bullet holes in the car's left rear and right door. Ward traced the paths of the bullets and found a bullet hole in the back of the driver's seat and collected a bullet from the "seat or on the floor by the seat" on the right side of the vehicle.

Barton identified appellant in court and testified he had met appellant "about a month" before the shooting. The first time they met, Barton went to appellant's house "to buy some dope" and traded some surveillance cameras to appellant "for some dope." After their initial meeting, Barton went to appellant's house "a couple times a week." Barton testified appellant drove a blue "old school pickup truck." At some point, Barton got behind, "as far as money," with appellant, and Barton started selling drugs for appellant's drug supplier, "Jamie." Barton didn't know if he was "stepping on [appellant's] toes" at that point.

On the night of the shooting, Barton and Maestas were in Maestas' car driving over to Jamie's house to pay her some money Barton owed her. When they arrived, appellant's girlfriend, Amanda, was in the living room, and this concerned Barton. Barton went to the back bedroom, paid Jamie some money, and left with Maestas in her car. About a block away, appellant drove up in his truck and tried to run Maestas off the road. Appellant came from in

front of Maestas' car and "tried to clip us off the side of the road into the yard." Appellant "clipped" Maestas' car and "jammed us on the side of the house in the front yard at like an angle." Appellant was "talking about . . . you going to pay my money and all of this," and he waved a pistol. Appellant was "real pissed off, real sweaty, real angry," and Barton told Maestas to "just go." Barton got a clear look at appellant and had no doubt as to his identity.

Maestas "proceeded to head off," and appellant started following, getting closer and closer. At that point, Barton heard a pistol shot. The shot hit the car, and Maestas "like jerked." Barton unbuckled his seat belt and turned around and tried to block Maestas. Barton could see appellant getting closer and saw him "constantly in and out of the window," but he was not looking directly at appellant when he shot. However, Barton testified there was no doubt in his mind who was behind him and who "did the shot." Barton heard a second and a third shot and felt a "hot sting in [his] body." Maestas pulled up at the beer store, and Barton "just fell out." Barton later had surgery to remove the bullet, and he had to have a colostomy bag which he still had at the time of trial. A jury convicted appellant of aggravated assault and deadly conduct, and these appeals followed.

In his first point of error, appellant argues the evidence is legally insufficient to support his convictions. Specifically, appellant argues that both Barton and Maestas were appellant's accomplices because of their involvement with Jamie, appellant's drug supplier. Thus, appellant argues, in conducting a legal sufficiency review under the accomplice witness rule, we must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the crime, citing *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).

Texas law requires that, before a conviction may rest upon an accomplice witness's testimony, that testimony must be corroborated by independent evidence tending to connect the accused

–3–

with the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). This accomplice witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Id.* To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it. *Id.* In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness. *Id.* And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness. *Id.* In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law. *Id.*

Here, neither Barton nor Maestas could have been prosecuted for aggravated assault or deadly conduct or a lesser-included offense of either charge; Barton and Maestas were the victims of these offenses. Any complicity in the drug-related activities of Jamie or appellant himself does not make either Barton or Maestas' testimony that of an accomplice witness. *Id.* To the extent appellant challenges the legal sufficiency of the evidence generally, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319-19 (1979).

–4–

Appellant was charged with aggravated assault by knowingly and recklessly causing bodily injury to Barton by shooting him with a firearm and using and exhibiting a firearm during the commission of the assault. Appellant was charged with deadly conduct by discharging a firearm at and in the direction of Maestas' vehicle and being reckless as to whether her vehicle was occupied at the time he discharged the firearm. Barton testified he saw appellant chasing Maestas' vehicle and had "no doubt" appellant shot into the car, striking Barton. Barton testified appellant shot at the car twice more, and Ward testified he saw bullet holes in Maestas' vehicle and recovered a bullet from inside the car. We conclude this evidence was legally sufficient to show appellant committed aggravated assault and deadly conduct, as charged in the indictments. *See id.* We overrule appellant's first point of error.

In his second point of error, appellant argues he received ineffective assistance of counsel. Specifically, appellant complains his counsel failed to "present pre-trial motions to the trial court," failed to object to statements made by the State during voir dire regarding the culpable mental state of "intentional," failed to preserve error regarding "the State's misstatement of the law pertaining to what the jury must decide," "improperly affirmed that evidence comes from 'the attorneys,'" accepted the trial court's time limits on voir dire without objection, did not preserve error regarding photographs of appellant's tattoos, failing to object to the State's argument that appellant suffers from schizophrenia and the jury's punishment should be more harsh, and failing to object to Ward's "hearsay testimony."

A claim of ineffective assistance of counsel is reviewed under the *Strickland* test. *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In determining whether counsel rendered ineffective assistance, an appellate court considers two factors: (1) whether counsel's performance fell below an objective standard of reasonableness and (2) whether, but for counsel's deficient performance,

the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex Crim. App. 1999). Appellant bears the burden of proving his counsel was ineffective by a preponderance of the evidence. *Id*. at 813.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813. To defeat this presumption, appellant must prove that there was no plausible professional reason for a specific act or omission. *Bone*, 77 S.W.3d at 836. Any allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. Thus, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the record on direct appeal is not developed adequately to reflect the reasons for defense counsel's actions at trial. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Here, we do not have an adequate record to review appellant's claim of ineffectiveness. *See id.*; *Thompson*, 9 S.W.3d at 813-15. Appellant must prove that there is no possible strategic reason for counsel's actions and trial counsel should be given the opportunity to explain his actions before being denounced as "ineffective." *Bone*, 77 S.W.3d at 836. The record before us is devoid of evidence from trial counsel himself and is "simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 814 (citing *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998)).

The record is silent as to why appellant's trial counsel did not make the objections about which appellant complains. Therefore, appellant has failed to rebut the presumption that counsel's decisions were reasonable, and we overrule appellant's second issue. *See Bone*, 77 S.W.3d at 833; *Thompson*, 9 S.W.3d at 813-14.

In his third issue, appellant argues the trial court erred in denying his motion to strike a juror. The record shows that, during appellant's trial, the court received a note from a juror stating, "Drug dealers make me nervous because my brother-in-law was killed in Mexico because he testified against a drug dealer. This happened six months ago. I'm not sure I can go through this." Outside the presence of the other jurors, the trial judge explained to the juror that no jurors had ever been threatened, and the judge knew of "no case where anybody has been harmed." The trial judge stated: "These are serious decisions. That's what felony cases are. But if you think you can do this, then I'd like for you to try. Do you think you can do it, ma'am?" The juror responded: "I think I can do it. I was just – I guess I wanted to be assured that I'll be okay." The trial judge further inquired whether the juror could "keep deliberating," and the juror answered, "Sure."

Appellant's counsel questioned the juror, asking whether the juror was "afraid of my client." The juror stated she was "afraid of drug dealers." The trial judge asked, "are you specifically afraid of [appellant], though?" The juror answered, "No, not of him." Appellant's counsel asked the juror if she could "listen to the evidence and not concern [herself] with [appellant] necessarily." The juror answered, "Correct. I was more about the drugs involved." The juror affirmed twice that she could be fair, and the judge excused her from the court room. Appellant's counsel moved to strike the juror, and the trial judge denied the motion.

Article 35.16(a)(9) of the code of criminal procedure requires that a prospective juror be dismissed for cause when challenged if the juror "has a bias or prejudice in favor of or against the defendant." TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Bias is an inclination toward one side of an issue rather than to the other which leads to the natural inference that a juror will not act with impartiality. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982). A trial court's decision to deny a challenge for cause will not be

overturned absent a clear abuse of discretion. *See Burks v. State*, 876 S.W.2d 877, 893 (Tex. Crim. App. 1994). In determining abuse of discretion, we review the record to determine if it supports the trial court's implied finding that the prospective juror's views would not "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *See id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). We undertake our review with considerable deference to the trial court's ruling because the trial judge is in the best position to evaluate a venire member's demeanor and responses. *See Gardner v. State*, 306 S.W.3d 274, 295– 96 (Tex. Crim. App. 2009). When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision. *Id.*

Here, the juror sent a note that "drug dealers [made her] nervous." Upon questioning by the trial judge, the juror stated she could "keep deliberating," and explained she "wanted to be assured" that she would be "okay." The juror stated she was not "specifically afraid of" appellant, and she said she could "listen to the evidence and not concern [herself] with [appellant] necessarily." Twice, the juror stated she could be fair. Under these circumstances, we conclude the trial court did not abuse its discretion in denying appellant's motion to strike. *See Burks*, 876 S.W.2d at 893. We overrule appellant's third point of error.

We affirm the trial court's judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

110939F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL MARSHALL, Appellant

No. 05-11-00939-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F10-12634-Y.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 30th day of April, 2013.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MICHAEL MARSHALL, Appellant

No. 05-12-00070-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F10-12635-Y.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 30th day of April, 2013.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE